Good morning. Good morning, sir. If I might, I'd like to reserve three minutes for rebuttal. Very well. Thank you, Your Honor. Mr. Korotkiy challenges in the court to reverse his conviction under count two of the four-count indictment he was found guilty of trial on three of four counts. Count two presents an important legal issue at the intersection of the Marpole Convention, which controls pollution on the high seas, statute acts that implements it in the United States and the regulations promulgated under acts. Thank you. Maybe I'd like to ask a question that is a little bit prior to us getting to the actual problem here. It's my understanding there was a judgment on September the 18th of 2023 that your client was sentenced to 12 months and one day to be served consecutively for three different counts, this being one of the three counts, that they were all consecutive, each one had a sentence of 12 months and one day, and that he served until April 15th of 2024, and that he's out now. That's what I have. Why is this not moot? Your Honor, it's not moot from among other reasons that Chief Korotkiy is currently detained on in place. He's not detained on any of this. Well, he is detained because of the convictions here, and we moved in the district court for him to be released at the conclusion of his sentence. The government didn't expressly object to that motion, but didn't express an opinion. Judge Robinson denied the motion. He stands convicted under count two, and he's currently detained. Well, he stands convicted under three counts. Yes, sir. All of them the same sentence. And this one in the middle of the other two is the one we're appealing, and I have the documents to suggest that he was released on April 15th, 2024. So I'm surprised you're saying he's still in jail on this or on something else. He's held on an immigration detainee, Your Honor, because of his convictions. Oh, on the immigration detainee. But he's got three, and do you think two is any less than three? I mean, what's the significance? So there was a similar issue in the Fathalios case in the Fifth Circuit. Mr. Fathalios was released pending appeal, as I recall, but with his conviction on the abs count, the count two count here, was reversed. Mr. Fathalios was remanded for additional sentencing, and as a result of the additional on behalf of Chief Korotke and his family, which is, they consider themselves Russians, they're on the Crimean Peninsula, and they're desperate to get their father and husband home. He is desperate to be home. I spoke with him the day before yesterday. I am optimistic that if this court vacates the conviction on count two, Judge Robinson will be willing to intercede and help me get Chief Korotke back to the Crimean Peninsula. That's my goal. All right, well, I just threw that in because, I mean, I'm trying to cast myself, made this head work on this particular case, and I thought, boy, maybe I got an easy way out. So you've said I haven't. Could the United States refer the failure to make this record barred record book entry to Liberia? Yes, that's what it's obligated to do under the treaty. It's required to refer it to Liberia. What provisions of the Regulation 17 were violated? So, based on the jury's findings, the jury appeared to conclude that on the high seas, Chief Korotke failed to make entries for... Well, that would be item two under MARPOL Regulation 17. Yes. And then he also didn't do it without delay, so that would be regulation, that would be item four under MARPOL Regulation 17. Yes, Your Honor. Could he also go back to Liberia under item one? Under subsection one of MARPOL Regulation 17? I don't have it in front of me, but probably, Your Honor. Because if he could go back to there on one, would Liberia be talking about whether it was correctly done? So, the jury concluded that the entries weren't correctly made. I understand that, but what you're really arguing is that under item one, it doesn't need to be correct. No, Your Honor. What I'm arguing is that under item one of Regulation 17... MARPOL. MARPOL Regulation 17 says the vessels will be provided with an oil record book. I don't think it was provided with an oil record book, so I don't think he could be... Well, but just a minute, it says the oil record book, whether part of the ship's official log book or otherwise, shall be in the form supplied in appendix three. Yes, sir. And if I look at appendix three, which I did... Yes. It suggests that you've got to put all this information in the log book, and then it says, and I read to you, because that's the thing that makes it the most worrisome to me, the oil record log book contains many references to oil quantity. The limited accuracy of tank measurement devices, temperature variances, and flingage will affect the accuracy of these readings. So therefore, the entries in the oil record book shall be considered accordingly. In other words, you don't have to really worry exactly about those, about what should be put in about oil quantity, but that also seems to indicate that even under MARPOL, one ought to make correct entries. I think there's no question, Your Honor, that under MARPOL... I should choose my words carefully. MARPOL doesn't directly regulate vessels or crews, but it's implemented by flag state law, and the flag state law does. So under Liberian law, any incorrect entry is a violation of Liberian law. I had a related argument in the First Circuit... So if it's a violation of the law, then why is it that trying to apply MARPOL now and not let the United States get outside their jurisdiction, the only thing that the United States has done here is they have suggested that maintain equals have correct regulations. In the end, that's all it seems to me you're admitting MARPOL also requires. MARPOL requires accurate regulations, and APPS requires accurate regulations. The question is, who gets to prosecute an inaccurate entry that occurs on the high seas? And the government hasn't disagreed that under MARPOL, the flag state prosecutes it. And the government hasn't disagreed that under APPS, as written by Congress, the flag state gets to prosecute it. And if we don't like what the flag state does, we arbitrate in front of the International Maritime Organization and say, hey, this is a slap on the wrist for a serious matter. You need to impose real sanctions. They don't, however, necessarily need to be criminal sanctions. The government argued in the First Circuit case of mine two months ago that its problem with Liberia is it only allows for license suspension and civil penalties. And we are refusing to honor our agreement. Counsel, I guess this is a problem that I have. I wanted to make sure that I understood your argument when I did the research. I understood that the Third Circuit, the Fifth Circuit, and the Second Circuit have addressed this particular question about how these logbooks are maintained and their understanding of what maintained means. Yes, Your Honor. How are those cases different? Because they seem to come out the opposite of your position. I mean, to some extent, they're wrong. But they're also, okay, and I thought you might say that, but here's my problem. They've been wrong since 2008. If this was an important enough question that you think the Supreme Court would have addressed it at any one of those three times that it's been decided? I don't know whether, sir, whether, sir, it's been requested. I think there's a good chance that this Court agrees with those either way. Why would we create a circuit split? Well, I think the Supreme Court may take this case one way or the other, Your Honor, including because of the question that's presented by whether, if it's agreed that the international community said that's Liberia's job and Congress said that's Liberia's job and the purpose of the regulation, which given all the history we've done investigating how the regulation came to be and why the words are there, if the purpose of the regulation was to change the congressional and international community determination that this is Liberia's matter, if the Coast Guard decided to change it and say, you know what, we'll just give our full jurisdiction here. But in your absence, didn't Congress tell the Coast Guard that they could enforce this, create the regulations that they did, and then we can prosecute? But the only purpose of this interpretation of the regulation is to give our country jurisdiction over high seas events and high seas record keeping because the requirement for accuracy is already there in the law. We haven't added an accuracy requirement at all. We've only added a change in the congressionally established determination of who's going to enforce that accuracy requirement. So you're not arguing that there isn't any accuracy requirement. You're only arguing that maintain doesn't mean accuracy. I mean, I've read your brief pretty carefully. That's what I thought you were saying. Maintain doesn't mean accuracy. That's what you argued in the brief. Are you abandoning those arguments today? No, Your Honor. They're both arguments. Maintain, as used here, doesn't mean accuracy. But other provisions in MARPOL and in APPS and in Regulation 17, Your Honor, make clear that accuracy is required. I mean, I went through 17 and I tried to find something that really went to accuracy and I couldn't find it. It shall be recorded fully and completely without delay. That to me clearly requires accuracy much more than the word maintain a record requires accuracy. Okay. So that's where you say the accuracy. Because I was trying to figure out what maintain means. Yes. And I felt like that the other circuits jumped immediately to this is an ambiguous regulation. I'm going to put my own theory on it. So I tried to look at the statute and make it harmonize with each other. You argued it ought to be kept or preserved. But I was going to say to you, how can it be kept or preserved when I go down to I, J, and K and I look at J and J has kept and maintained in the same sentence. So it can't be kept. Boy, except that it says kept. It says for those vessels that are required to keep an oil record book. And there's no place where it says who has to keep an oil record book other than who has to maintain one. So maintain does mean keep in that sentence. And then also, Your Honor, that subsection. Just a minute. Perhaps they're having charge of a ship required to keep shall also be responsible for maintenance. So they're saying that it isn't just keeping it. He's also responsible for maintaining it. You can't say keep and maintain are the same or they just said keep it down here. Or they could eliminate it altogether. One reason why they are the same, Your Honor, is because if you look at Regulation 17, which the Court's discussed with me, it doesn't include the word maintain anywhere. Oh, I know that. It includes shall be provided with, shall preserve, or shall maintain. It does say that you shall have this record. If you look at the Regulation 17, it says as specified in the form Appendix 3 of this index, which is not maintain. That gets rid of maintain and A. But then I look at Appendix 3 of the annex and there I find it's got to be correct. So here's sort of the clearest reason why the circuits that have said maintain adds a correctness requirement. The first is it's already there. But the second is it doesn't make any sense in this context. The subsection the Court just referenced says the master is responsible for the maintenance of the book. But we know from all of the other subsections in both Regulation 17 and MARPOL, which is expressly part of that. It's incorporated into the congressional statute word for word. We know from those provisions but also from the regulation the master is not going to make any of these entries. He's not going to know whether they're accurate. So in a different context being responsible to maintain a record could mean that the client was charged as aiding and abetting. No, he was not. He was charged with willfully causing under 2B which we respectfully submit is an important distinction. There's no charge as to exactly who he willfully caused to fail to maintain a record but apparently it would be the master. And our argument in our initial briefing and in the reply brief is that under 2B you can only have liability if you cause someone to act not if you cause someone to fail to fulfill a duty. I'm a mandatory reporter of various things because I'm a lawyer in a few states. If someone doesn't tell me about an event that I would have to report that person hasn't caused me to fail to report. It's telling me to not have a duty. I've peppered you with questions. I'll give you a couple of minutes afterwards but you're over time. But I will give you a couple of minutes afterwards. I appreciate the questions. Thank you, Your Honor. Thank you, sir. Good morning. My name is Alan Graymender and I represent the United States. The defendant appeals his conviction based on three false premises. The first false premise being that an oil record book offense occurs on the high seas rather than in the United States. The second false premise being that there is no duty to maintain an accurate oil record book. And the third false premise is that as Chief Engineer he cannot be convicted of an oil record book offense. And I will address each one of those false premises in turn. Well, if you could hit maintain first because I think that's the big one. I'm still trying to figure out how we get accuracy into maintain. Oh. I mean the bottom line is if I read the regulations under 151.25 and I read MARPOL I'm trying to figure out where accuracy is involved in that particular regulation. It may be in other regulations but we're only talking about 17. And I'm trying to make it work. So how does the government get there? Seems to me the other circuits get there by saying we don't know what maintain is so we're just going to go to the dictionary and we're going to pick the definition we like best and we're going to put it in there and there it is. And that doesn't seem to be the way we are supposed to interpret a statute. Well, to be fair to the other circuits I don't think that's what they do. I haven't seen any I have not once seen anything about the text of 151.25 in any of these other Joe, Ionia or Vastardus. Well what the other courts did is apply the traditional tools of construction. Oh I did too. The first was to make this this regulation harmonious with itself. And I think you're correct in that regulation 17 does impose a duty of accuracy. Where? In regulation 17. Where? What language? As you've mentioned the duty to keep the duty to What language? Your Honor I apologize for not being able to point to the exact language but the language that you were referring to earlier. Well I didn't refer to any language in there because I don't think it's in there. But getting back to the rationale of the other courts of appeals they applied traditional tools of construction right? I don't think they did. Well they did. They looked at the plain meaning of the word maintain particularly in the record keeping context. You can't get to your hypothesis of what maintain means and go to the dictionary first. That's only if it's ambiguous. That's the only way you do that. Under real statutory interpretation. The first thing you've got to do is make it harmonized with the statute in which it's in. And frankly the statute which this is in doesn't say anything about it because the statute doesn't say anything except the Coast Guard posts the regulations. So I look at the regulations and I've got them here in front of me and I'm trying to make them consistent. I say to myself well it can't be keep because that's what he I think was arguing because Jay says he's got it required to keep and he's also required to maintain. But I've got nothing else that says maintain means accuracy. Well let me then first go to the purpose of the statute which the regulation is implementing. The purpose of the statute is what Congress thinks it is. Don't we have a lot of law that says we don't go there unless we think this is the ambiguous regulation? It seems to me that if I can't find accuracy there and I've looked through the whole statute to make it I don't have to say it's ambiguous. I can just say it. I'll look at and you can't do that Your Honor but the purpose of this statute is an anti-pollution statute. But and it's important to have accurate oil record books so that the government can cooperate and the enforcement of this international treaty. But I think it's also important to note that this regulation does not just enforce Apps and the Marpole Treaty. When you look at the authority cited for this it cites the Clean Water Act which implements the Oil Pollution Act. It also cites the Marine Casualty Statute which defines a marine casualty to include a pollution event. So when you look at the overall purpose for this regulation and the statutes that it's implementing, it's an anti-pollution statute. And it's important to have accurate records because it allows the United States not only to cooperate in the enforcement of the treaty but to detect malfunctioning pollution control equipment or to detect What would happen if we have if we took the interpretation that maintain apparently doesn't mean anything, it just means maintain in a pristine condition. Right. So what would we take that, what would it do in terms of either undermining the whole intent of Congress and HAPS if we took that particular view? Well it would be hard for the United States to cooperate in the enforcement of the treaty. It wouldn't be able to detect violations. But again going back to the other statutes. But it could refer it to Liberia to do it, right? Well it would probably never detect the violations and wouldn't be able to refer the violations there either. But going back to the other statutes again it's important to have an accurate oil record because it allows the Coast Guard to prevent potential future incidents in the United States in the navigable waters of the United States. Consistent with not only HAPS but with the Clean Water Act and the Marine Casualty Statute. And it's also important to note in our brief we cite 42 U.S.C. 721 which states that no vessel shall enter the United States with a passport that is in violation of MARPOL or has a history of accidents or malfunctioning pollution control equipment. Again having an accurate oil record book is necessary for the Coast Guard to perform its gatekeeping role just like the Border Patrol does at airports or at vehicle crossings. In this way it's similar to having an accurate passport. In order for the Border Patrol to do its job to know whether somebody is allowed to enter the United States, they have to have an accurate passport. Same here in this statute. In order to fulfill the duties under this statute there has to be an accurate oil record book so the Coast Guard can determine whether or not this vessel is allowed in the United States. It's interesting that you would look at another statute because so did I. I looked at the federal law governing official log books for domestically flagged vessels and the domestically domestic vessels of a certain tonnage or those voyaging to a foreign port other than the port in Canada shall have an official log book 46 USC 11301A in which the master of the vessel is required to make or have made particular entries. Seems similar. The corresponding penalty provisions, however, when I look at those are instructive. First, the statute separately penalizes failing to maintain an official record book and failing to maintain an entry in the vessel's official log book. All of those covered under DEF, none under A. Second, if 303A and B are understood to parallel, the substantive requirements the statute interchanges maintain and have in the same manner rather than accurately have. So in that instance they don't go to accuracy. Well, all I'm trying to do is understand what this language says. I don't want to be against my colleagues. I've got three circuits who are saying something different, but I couldn't find anybody looking at the text, so I wanted you to help me. I understand, Your Honor, and the best I can do again is say that you don't have to look the term doesn't have to be ambiguous before you look to its meaning, right? It's a common thing. Why doesn't it? My first look, if my first look to understand what a statute means is not to say it's ambiguous and go to the dictionary. My first look is to look at the statute and make it coordinate with itself. And then, if I can't find out what it's doing, I go find it some other way. And even if I get to the dictionary, it seems like my colleagues didn't adopt the first definition in the dictionary about maintain. They opted for a definition which was the third or fourth definition, depending on the dictionary you're looking at. Well, it's because this is the record keeping context, so you have to interpret maintain in the context of record keeping. And in record keeping context, you need accurate records, otherwise it's not a record of anything. So, to maintain in that context means to keep up, to keep in a state of validity, to declare to be true. So, when the Second Circuit says no reasonable reader of this regulation could conclude, given the context, that the regulation merely imposes an obligation to preserve the oral record book in the existing state, it was not only looking to the plain meaning of maintain in the record keeping context, it was looking to the structure of the regulation itself, including subsection J, which uses the term differently, and it was looking to the purpose of the statute itself. And if I may briefly address the subsection 2B arguments that the defendant as the chief engineer cannot be convicted, under section 2B you combine the actus rea of the principle with the mens rea, or the bad intent of the malfeasor, in this case the defendant. So, it's if the defendant's bad intent causes the principal, or in this case the captain, to violate a duty, that's an offense under section 2B. And it's simply not true that well, first of all, we don't think this is an act or this is not an omission case. The defendant knowingly caused the failure to maintain an affirmative fail. But this court has held that omissions, causing an omission, is sufficient under 2B. It held this in United States v. Singh, which is 924 F. 3rd 1030. That case was overturned by the Supreme Court on a different ground. But you can also look to the other cases that this court cited for that same proposition, which is United States v. Curran out of the 3rd Circuit, United States v. Richardson out of the 4th Circuit, and United States v. Sands out of the 11th Circuit. And unless the court has any other questions. All right. Thank you. Your Honors, the additional evidence that maintain was not intended to and does not mean make sure the record is accurate concerning prior entries are 1. It makes no sense to say you only have to, under our law, make entries while you're here. But you also have to make sure that prior entries we didn't require are accurate. 2. The responsibility belongs to the master who would not be expected to know or do anything to determine the accuracy of a record book kept on many of these vessels, 8 to 10 floors lower on the vessel concerning operations of which he's not involved at a time when his navigational responsibilities are most important as he's approaching a port. 3. We detailed in our brief that these regulations, the verbiage came from all regulations that expressly didn't apply to foreign ships. 4. We discussed the GAO study that shows the Coast Guard didn't have this interpretation then. 5. The Coast Guard didn't adopt its interpretation, and the Environmental Crime Section of the DOJ didn't adopt their interpretation of the regulation for 20 years after the regulation was adopted. They prosecuted chief engineers and captains for presenting a record under 1001 and thus started, which the court asked me about earlier, found that the crime was aiding and abetting the presentation of a false record. Presentation is not charged in count 2 here at all, or in the incorporated questions. Finally, the General Accounting Office, under the Paperwork Reduction Act of, I think, 1984, gets an update from every agency every few years, what's the burden of your record keeping requirements, and every single time the Coast Guard has submitted a record of its burden for its record keeping requirements, it calculates how many hours it takes to complete the oil record book only based on U.S. ships. It never suggests to the General Accounting Office that we impose a record keeping requirement on foreign ships. We are using it only to bypass what we agreed to, deference to flag state for enforcement in these matters. We are forcing seafarers ashore as part of the human collateral for the release of the vessel they arrived on. Chief Karaki was forced ashore. He was here for six months before he was charged as human collateral for the release of the vessel. We should not be doing this based on a confused, mistaken interpretation of a regulation the Coast Guard did not intend to have that meaning. Thank you again. Thank you very much. This matter will be submitted at this time.
judges: SMITH, MENDOZA, UNKNOWN